

**FILED**
**July 7, 2015**
**Third Court of Appeals**
**Jeffrey D. Kyle**
**Clerk**

ACCEPTED
03-15-00034-CV
5930003
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/2/2015 7:46:36 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00034-CV

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/2/2015 7:46:36 PM
JEFFREY D. KYLE
~~Clerk~~

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

JUAN O. LOPEZ d/b/a J.L. CONSTRUCTION CO,

*Appellant*

v.

DAVE BUCHHOLZ and MARY A. BUCHHOLZ

*Appellees*

On Appeal from the 274th District Court, Comal County, Texas
Trial Court Cause No. C2014-0259C

---

APPELLEE'S BRIEF

---

**THE VETHAN LAW FIRM, P.C.**

Joseph L. Lanza
Texas Bar No. 00784447
J. Seth Grove
Texas Bar No. 24069833
8700 Crownhill Blvd., Suite 302
San Antonio, Texas 78209
Telephone (210) 824-2220
Facsimile (210) 826-2223

**Appellate Counsel for Dave and Mary Buchholz**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... ii

INDEX OF AUTHORITIES ............................................................ iii

STATEMENT OF THE CASE .................................................... viii

STATEMENT REGARDING ORAL ARGUMENT .................................. ix

DESIGNATION OF RECORD REFERENCES ............................................x

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS .........................................................................1

SUMMARY OF ARGUMENT....................................................................7

ARGUMENT .........................................................................................10

CONCLUSION.......................................................................................49

# INDEX OF AUTHORITIES

## Texas Supreme Court Cases

*Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*,
249 S.W.3d 380, 389 n. 32 (Tex. 2008)..................................................16

*BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990) ........................48

*City of Brownsville v. Alvarado*, 897 S.W.2d 750 (Tex. 1995)..............................10

*Da-Col Paint Mfg. Co. v. American Indem. Co.*,
517 S.W. 2d 270, 273 (Tex. 1974)........................................................42

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).....10

*Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)....................................17

*Forbes, Inc. v. Granada Biosciences*, 124 S.W.3d 167, 172 (Tex. 2003)..............26

*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 599 (Tex. 2004)............................26

*Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010)........................27

*General Servs. Comm'n v. Little-Tex. Insulation Co.*,
39 S.W.3d 591, 598 n. 1 (Tex. 2001)....................................................34

*Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ..........39

*Hayek v. Western Steel Co.*, 478 S.W.2d 786, 790-91 (Tex. 1972) ........................48

*In re Delta Lloyds Ins. Co. of Houston*, 339 S.W.3d 384, 392 n. 7 (Tex. 2008).....26

*Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966) ....................................17

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
289 S. W.3d 844, 848 (Tex. 2009)........................................................26

*McCamant v. Batsell*, 59 Tex. 363 (1883).............................................37

*Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) ........................25

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S. W.2d 546, 548 (Tex. 1985) ........................26

*Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860 (Tex. 1979)..................35

*Strang v. Pray*, 89 Tex. 525, 35 S.W. 1054, 1056 (1856) ......................................48

*Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009)..............................26

*T.O. Stanley Boot Co., Inc. v. Bank of El Paso*,
847 S.W.2d 218, 221 (Tex. 1992)..........................................................................33

*Travelers Ins. Co. v, Joachim*, 315 S.W.3d 860,862 (Tex.2010) ...........................25

*Truly v. Austin,* 744 S.W.2d 934, 936 (Tex.1988)..................................................41

## Texas Courts of Appeal Cases

*Behr Southerland Construction, Inc. v. H.W. Wahlers, Inc.*,
No. 04-00-0069-CV, 2001 WL 729292, at *2
(Tex.App.—San Antonio June 29, 2001) ...............................................................17

*Becker, Smith & Page, Inc. v. Wm. Cameron & Co.*,
22 S.W.2d 951, 952 (Tex. Civ. App. -- Waco 1929, writ dism'd)..........................36

*Bookstall, Inc. v. John Roberts, Inc.*,
517 S.W.2d 451, 452 (Tex. Civ. App. -- Austin 1974, no writ).............................36

*City of Ingleside v. Steward*, 554 S.W.2d 939, 943
(Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).........................................38

*Coastal States Crude Gathering Co. v. Natural Gas Odorizing, Inc.*,
899 S.W.2d 289, 291 (Tex.App.—Houston[1st Dist.] 1995, writ denied)...............49

*Copeland v. Hunt*, 434 S.W.2d 156, 158
(Tex. Civ. App. -- Corpus Christi 1968, writ ref'd n.r.e.)......................................36

*Crockett v. Brady*, 455 S.W.2d 807, 808
(Tex.Civ.App.—Austin 1970, no writ)...................................................................38

*Crocket v. Sampson*, 439 S.W.2d 355, 358
(Tex.Civ.App.—Austin 1969, no writ)...................................................................38

*De La Morena v. Ignenieria E Maquinaria De Guadalupe, S.A.*,
56 S.W.3d 652 (Tex.App.—Waco 2001, no pet.) ....................................................13

*Fieldtech Avionics & Instruments, Inc. v. ComponentControl.com, Inc.*,
262 S.W.3d 813 (Tex.App.—Fort Worth 2008, no pet.).........................................13

*Gen. Homes, Inc. v. Denison*, 625 S.W.2d 794, 796
(Tex. App.—Houston [14th Dist.] 1981, no writ) .....................................................41

*Gibson v. Bostick Roofing & Sheet Metal Co.*,
148 S.W.3d 482, 490 (Tex. App.—El Paso 2004, no pet.).............................. 37, 42

*Hassler v. Texas Gypsum Co.*, 525 S.W.2d 53, 54
(Tex.Civ.App.--Dallas 1975, no writ).............................................................. 36, 37

*HECI Exploration Co. v. Clajon  Gas Co.*,
843 S.W.2d 622, 638 (Tex. App.--Austin 1992, writ denied) .................................48

*Hollingsworth v. Nw. Nat'l Ins. Co.*,
522 S.W.2d 242, 245 (Tex.App.—Texarkana 1975, no writ) .................................35

*Houston Med. Testing Services, Inc. v. Mintzer*,
417 S.W.3d 691, 695 (Tex. App.—Houston [14th Dist.] 2013, no pet.)..................41

*Industrial Structure & Fabrication v. Arrowhead Indus. Water*,
888 S.W.2d 840, 845, (Tex.App.—Houston 1st Dist. 1994, no pet.)................ 48, 49

*Jimoh v. Nwogo*, 2014 Tex. App. LEXIS 13797, 2014 WL 7335158
(Tex. App. Houston 1st Dist. Dec. 23, 2014) .........................................................46

*Johnston v. Kruse*, 261 S.W.3d 895, 902
(Tex.App.—Dallas 2008, no pet.)................................................................... 18, 19

*Kelly v. Brenham Floral Co.*, No. 01-12-01000-CV,
2014 Tex. App. LEXIS 9464, 2014 WL 4219448, at *4
(Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no pet.) (mem. op.) ....................46

*McFarland v. Sanders*,
932 S.W.2d 640, 643 (Tex. App.—Tyler 1996, no pet.)................................... 38-39

*Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 551
(Tex. App.—Houston [14th Dist.] 2003, pet. denied) ...............................................39

*Residential Dynamics, LLC v. Loveless*,
186 S.W.3d 192, 198 (Tex.App.—Fort Worth 2006, no pet.)............... 28-29, 30, 31

*Sanders v. Total Heat & Air, Inc.*,
248 S.W.3d 907, 917 (Tex. App.—Dallas 2008, no pet.) .......................................39

*Starlight Supply Co. v. Feris*,
462 S.W.2d 608, 609 (Tex. Civ. App. -- Austin 1970, no writ)..............................36

*Tex. Dep't of Pub. Safety v. Burrows*,
976 S.W.2d 304, 307 (Tex. App.—Corpus Christi 1998, no pet.) .........................46

*Texas Man's Shop, Inc. v. Nunn-Bush Shoe Co.*,
401 S.W.2d [4] 716, 718 (Tex. Civ. App. -- Corpus Christi 1966, no writ) ..........36

*Triland Paving Investment Group v. Tiseo Paving Co.*,
748 S.W.2d 282, 284 (Tex.App.—Dallas 1988, no writ).......................................20

*Vice v. Kasprzak*, 318 S.W.3d 1
(Tex.App.—Houston[1st Dist.] 2009, pet. denied) ............................... 11, 13, 16, 22

*Weynard v. Weynard*, 990 S.W.2d 843, 846
(Tex.App.—Dallas 1999, pet. denied)...................................................................33

*Williamsburg Nursing Home, Inc. v. Paramedics, Inc.*,
460 S.W.2d 168, 169 (Tex. Civ. App. -- Houston (1st Dist.) 1970, no writ)...........36

## Constitution, Statutes and Rules

TEX. CONST. art. XVI, § 37 ...................................................................... 47-48

TEX. CIV. PRAC. & REM. CODE § 37.009 ........................................................ 47

TEX. CIV. PRAC. & REM. CODE § 38.001 ........................................................ 46

TEX. PROP. CODE §§ 53.001-.260 ............................................................ 47-48

TEX. PROP. CODE ANN. § 53.001(7) ............................................................ 42

TEX. R. APP. P., Rule 33.1(a) ................................................................. 46

TEX. R. APP. P., Rule 38.2(a)(1)(B) ............................................................ 1

TEX. R. CIV. P., Rule 166a(c) ................................................... 6, 11, 12, 13, 27

TEX. R. CIV. P., Rule 166a(f) ........................................ 6, 11, 12, 13, 14 n. 22, 18

TEX. R. CIV. P., Rule 166a(i) ................................................................. 25

TEX. R. CIV. P., Rule 193.6 ............................................................... 14, 15

TEX. R. CIV. P., Rule 195 ..................................................................... 35

TEX. R. EVID., Rule 801(e)(2)(A) ............................................................. 24

## Secondary Sources

BLACK'S LAW DICTIONARY 308 (8th Ed. 2004) ................................................. 16

BLACK'S LAW DICTIONARY 308 (9th Ed. 2009) ................................................. 17

BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY, 2d Ed. .............. 16 n. 26

## STATEMENT OF THE CASE

*Nature of the case:* This is an appeal from a cause of action for breach of an alleged oral contract, sworn account, *quantum meruit*, and foreclosure of a constitutional lien, related to the construction of a driveway, sidewalk, and flagstone for a residence.

*Trial court:* 274th Judicial District Court, Comal County, Texas; the Hon. Dib Waldrip, presiding (though Judge Gary Steel is the elected Judge of the 274th District Court, Judge Waldrip considered and ruled upon the motion for summary judgment and Appellees' motion for reconsideration in this cause).

*Trial court disposition:* The trial court granted Appellees' traditional and no-evidence motion summary judgment on December 12, 2014 against Appellant-Plaintiff on his claims against Appellee-Defendant. (CR 216-217). Appellant's motion for rehearing, filed December 29, 2014 (CR 218), was overruled on January 14, 2015 (CR 237), on which date, the Court also severed all claims against Appellees-Defendants from those remaining in the underlying lawsuit (CR 242-243), and entered a final judgment in favor of Appellees-Defendants (CR 240-241).

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not believe oral argument would assist in the disposition of this case. However, should the Court grant Appellant's request for oral argument, Appellees request equal opportunity to be heard.

# DESIGNATION OF RECORD REFERENCES

The record in this appeal consists of the clerk's record filed on March 20, 2015 and the reporter's record filed on February 27, 2015. This appellate brief uses the same conventions adopted by Appellant in citing the record and appendix:

Clerk's Record:

CR [page]

Reporter's Record:

[volume] RR [page:line]

Appendix:

APP. [tab number]

**TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:**

Appellees, Dave Buchholz and Mary A. Buchholz file this Brief in response to Appellant Juan O. Lopez's Brief on the merits.

## INTRODUCTION

This is a lawsuit arising out of a written contract for the construction of a home. Appellant, Juan Lopez, was a subcontractor on the homebuilding project. The contractor, Scott Preiss, did not pay him. Rather than bite the hand that feeds him, and having passed the deadline to file a statutory Mechanics and Materialman's lien against the property as a subcontractor, Lopez did the only thing he could – he fabricated a non-existent "oral contract" between himself and the homeowners, Dave and Mary Buchholz, for the work he did. His averments, however, are contrary to all the paperwork, and the course of conduct between himself and the contractor for the duration of the project. Nonetheless, he contends that his self-serving and conclusory statements regarding the existence of an oral contract are enough to survive summary judgment and subject the Buchholzes to continued litigation.

## STATEMENT OF FACTS

Pursuant to Rule 38.2(a)(1)(B) of the Texas Rules of Appellant Procedure, Appellees Dave and Mary Buchholz (the "Buchholzes") provide the following statement of facts. The Buchholzes' summary judgment evidence established the following undisputed facts.

Dave and Mary Buchholz entered into a contract with Scott Preiss to build a home.[1] Pursuant to this agreement, Scott Preiss was the general contractor (defined as "Contractor" in the document), on the home.[2] As general contractor, Preiss was fully responsible for the construction of the home.[3] As general contractor, Preiss expressly had sole control, responsibility and authority to execute all subcontracts, and make payments until the construction site was released under the contract.[4]

To facilitate the construction of the home, the Buchholzes took out a Construction Loan with Lone Star Bank in the amount of $415,000.[5] The Construction Loan documents expressly identified "Scott Preiss" as the sole general contractor on the job, and provided that as the general contractor he was responsible for submitting draw requests on the Construction Loan, and for itemizing bills and expenses to be disbursed from the loan draw proceeds.[6]

Lopez was a subcontractor to Preiss during the construction of the home.[7] As general contractor, Preiss negotiated for and was obligated to pay for all of Lopez's

---

[1]    CR 127-131; Exhibit A, Buchholz MSJ, construction contract.
[2]    *Id.* at CR 128.
[3]    *Id*.
[4]    *Id*. at CR 128-129.
[5]    CR 137-140; Exhibit C, Buchholz MSJ, disbursement disclosure statement.
[6]    *Id*. At all times material to this lawsuit, Scott Preiss Homes was a mere trade name or d/b/a for Scott Preiss, individually.
[7]    CR 138, Exhibit C, Buchholz MSJ, disbursement disclosure statement reflecting that Lopez was a subcontractor.

work on the Buchholz home.[8] For example, Lopez poured the slab and framed the home, and presented invoices to Scott Preiss.[9] Lopez was paid with checks issued from a construction project account in the name of Scott Preiss.[10] He received payment from Scott Preiss for the work, and was well aware that Scott Preiss was the general contractor, not the owner.[11]

Lopez expressly acknowledged in written discovery that there is no written contract between him and the Buchholzes for the construction of a driveway, sidewalk, and flagstone.[12] Despite a failure to supplement the response, for the first time in response to the motion for summary judgment, Lopez contends two invoices, written by him, constitute more than a scintilla of evidence for the existence of a contract. A facsimile of one of the invoices is reproduced below:[13]

---

[8]   CR 160-161; Exhibit G, Buchholz MSJ, Affidavit of Dave Buchholz.

[9]   CR 132, 136, Exhibit B, Buchholz MSJ, invoices for slab, framing, stone and stucco.

[10]  CR 149-155; Exhibit F, Buchholz MSJ, cancelled checks from "Scott Preiss Homes Buchholz Construction" account.

[11]  Though Lopez contends that the Buchholzes admitted that Lopez was hired by Preiss only to construct the slab and perform framing work, the contention is incorrect. In paragraph 20 of their Second Amended Answer and Third-Party Claim, the Buchholzes alleged that Lopez had been a subcontractor for Preiss on many occasions, and was a subcontractor for Preiss on the construction project. The Buchholzes alleged that Lopez was responsible for pouring the slab, was also the framer on the project, and was thus aware of Preiss identity as the contractor for the project.[11] That is a far cry from admitting Lopez was hired by Preiss to only construct the slab and do framing work.

[12]  CR 143; Exhibit D, Buchholz MSJ; Plaintiff's responses to Defendants' Request for Production. Lopez has never supplemented his response of "None" to the request that he produce "any contracts or agreement between [Lopez] and [the Buchholzes]."

[13]  CR 162, 191; the invoices were attached as Exhibit I to the Buchholz MSJ, and as Exhibit B to Lopez's response.

Exhibit I

| Invoice | | | | | |
|---|---|---|---|---|---|

SOLD TO

ADDRESS

CITY, STATE, ZIP

SHIP TO Juan Lopez
ADDRESS 2656 Pahmeyer Rd.
CITY, STATE, ZIP New Braunfels. Tx, 78130

| CUSTOMER ORDER NO. | SOLD BY | TERMS | F.O.B. | DATE |
|---|---|---|---|---|

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | 840 Haven Point Loop- | | | |
| | Flg | Stone in the porch and steps | | | 632.00 |
| | | Cover with flag stone bench 30"x8.04 | | | 1656.00 |
| | | | | | 11,388.00 |

A-5840 T-16706/46721          01-11

The "invoice" does not identify to whom the services were sold. Nor does the invoice identify an address for the person or entity to whom those services were sold. The "invoice" does not identify a customer order number. The "invoice" is entirely undated, and describes "Flagstone in the porch and steps."

The second invoice contains the identical deficiencies, with the exception that it is dated "10-17-13." October 17, 2013 is, not coincidentally, the date the general contractor, Scott Preiss, filed an Affidavit of Completion, stating that all bills incurred in the construction of the home had been paid, and that the owner had not received any notices from any sub-contractors of any unpaid claims.[14]

---

[14]    CR 157-157; Exhibit G, Buchholz MSJ, affidavit of completion.

Under "Description" the invoices do state "840 Haven Point Loop," but this is not unusual as the invoices submitted to Scott Preiss contained the same reference:[15]

The above-invoice, in fact, properly identifies Scott Preiss, the General Contractor, as the person to whom the services were provided.[16] However, Lopez did not always complete the "sold to" portion of these invoices, as shown by invoice numbers 100214 and 108222, which are for framing and stone work. Invoice 100214, reproduced below, illustrates this point.

---

[15]    CR 132, Exhibit B, Buchholz MSJ, copies of invoices showing goods sold to "Scott Preiss Homes/David Buchholz" or "Scott Preiss/David Buchholz."
[16]    In this context, "Dave Buchholz" refers to the project for which Preiss authorized the work.

**Invoice**

| SOLD TO | | | | SHIP TO | | | | |
|---|---|---|---|---|---|---|---|---|
| ADDRESS | | | | ADDRESS | Juan Lopez | | | |
| CITY, STATE, ZIP | | | | CITY, STATE, ZIP | 2656 Fahmeyer Rd. New Braunfels, Tx. 78130 | | | |
| CUSTOMER ORDER NO. | | SOLD BY | | TERMS | | F.O.B. | | DATE |

| ORDERED | SHIPPED | DESCRIPTION | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|
| | | 840 Haven Point Loop. | | | |
| | | Frame. 6528' x 4.00 | | | 26112.00 |
| | | | | | |
| | | | | | |

As can be seen, like the purported invoices to the Buchholzes, this one also lacks any information in the "sold to" section, and lacks a date. Yet Lopez has admitted that he was Scott Preiss' subcontractor on the framing work.

There is nothing about the purported invoices to the Buchholzes that distinguish them from the invoices submitted to Preiss for work done during the building project.

Prior to October 7, 2014, the Buchholzes had not received notice of any kind from any laborer, sub-contractor, materialman, or other person of a claim for any amount related to the premises. It was only after the affidavit of completion and waiver of all lien claims was signed by the Contractor Scott Preiss that Lopez delivered the disputed "invoices." Furthermore, it was only on January 30, 2014,

that the Buchholzes received a letter that Lopez expected them to pay instead of Scott Preiss.[17]

## SUMMARY OF ARGUMENT

The trial court properly sustained the Buchholzes' objections to the affidavits of Juan Lopez and Scott Preiss because the affidavits were inadmissible under Rule 166a(f) of the Texas Rules of Civil Procedure. Rule 166a(f) requires that supporting and opposing affidavits set forth such facts as are admissible in evidence. Conclusory and self-serving statements are not admissible in evidence. Because the affidavits included conclusory and self-serving statements, the trial court properly sustained the Buchholzes' objections to the affidavits and the stated paragraphs therein.

The court also properly granted the Buchholzes' no-evidence and traditional motion for summary judgment. Lopez presented no evidence supporting the existence of an oral contract between him and the Buchholzes, or evidence that he tendered performed under any such contract, that the Buchholzes breached any such contract, or that he was damaged by the breach. Lopez presented no evidence of a meeting of the minds between him the Buchholzes, no evidence of the terms of the alleged contract between them, and no evidence regarding performance of acceptance of the terms of any such contract. The statements in his and Scott Preiss'

---

[17]     CR 163; Demand letter, Exhibit J, Buchholz Motion for Summary Judgment.

affidavits were conclusory and self-serving, and the invoices in support were inaccurate or undated, and did not reflect to whom the services were rendered. The invoices are also no different in form than invoices he presented to the general contractor, Scott Preiss. Finally, Lopez's and Preiss' affidavit testimony is contrary to the documentary evidence that Scott Preiss was the general contractor, and that any contract Lopez had would have been with Preiss. This documentary evidence also negates at least one element of Lopez's claim for breach of contract, namely, that he had a separate oral agreement with the Buchholzes.

Lopez did not preserve his sworn account claim on appeal because he did not brief it. Even if the claim was preserved for appeal, the trial court nonetheless properly granted summary judgment because Lopez failed to present evidence that raised a genuine issue of material fact as to the existence of a contract between him and the Buchholzes, showing that a systematic record was kept, identifying with reasonable certainty the nature of each item, and the date and charge thereof, and that the Buchholzes were not strangers to the account. The invoices do not show to whom the services or materials were sold; one invoice is undated and one is inaccurate. Nor do the invoices identify with reasonable certainty the nature of each item, and the date the service was rendered or material delivered, or the amount of the charges. The defects in the invoices not only present no evidence of a systematic record identifying with reasonable certainly the nature of each item, and the date of

the charges, but conclusively negate at least one element of Lopez's cause of action for a sworn account because the invoices prove no systematic account was kept.

Lopez presented no evidence raising a genuine issue of material fact regarding his quantum meruit claim. He presented no evidence that valuable services or materials were provided for the Buchholzes, and that those services were accepted, used, and enjoyed by the Buchholzes under such circumstances that they were reasonably notified that Lopez expected payment from them before the services were rendered. The evidence shows any notification occurred well after work was completed. When a subcontractor contracts with a general contractor for work, a claim for quantum meruit does not arise simply because the owner is receiving a benefit. All the evidence in the case shows that Lopez worked as a subcontractor for Preiss. Their conclusory and self-serving affidavit statements are not admissible and do not rebut that evidence. Furthermore, the evidence conclusively negates at least one element of Lopez's cause of action for quantum meruit. A party cannot claim quantum meruit where there is a valid contract covering the services or materials furnished. The only evidence of a contract was the one between the Buchholzes and the general contractor, Scott Preiss.

Finally, Lopez failed to preserve for review his argument that the Buchholzes request for declaratory relief is a "mirror image" of his claim for foreclosure on his purported constitutional lien. He did not raise that argument at the trial level, nor did

he brief it at the trial level. Instead, he argued that attorney's fees were not proven under Chapter 38 of the Texas Civil Practices and Remedies Code. The Buchholzes, however, did not seek recovery of attorney's fees under Chapter 38; they sought recovery under Chapter 37, the Texas Declaratory Judgments Act.

Even if this issue were properly before this Honorable Court, the Buchholzes sought a declaration that the purported lien was invalid,clearing title, which the Trial Court granted. This was a request for affirmative relief and not a mere denial of Lopez's claim for foreclosure. Therefore, the Buchholzes request was a proper subject for a declaratory judgment.

## ARGUMENT

### FIRST ISSUE (RESTATED)

**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN SUSTAINING THE BUCHHOLZES' OBJECTIONS TO LOPEZ'S SUMMARY JUDGMENT EVIDENCE.**

### A. Standard of review for the exclusion of evidence.

A trial court's decision to admit or deny evidence is reviewed under an abuse of discretion standard. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750 (Tex. 1995). A trial court abuses its discretion when it reaches a decision in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). This Honorable Court may not reverse the trial court's decision to admit or exclude evidence simply because it disagrees with the decision. *Id*. at 242.

## B. **Trial Court properly excluded affidavits from summary judgment evidence**

The Buchholzes raised two separate objections under Rule 166a(f) and (c) to the affidavits of Juan Lopez and Scott Price. The trial court properly excluded these affidavits for being conclusory and self-serving under 166a(f). Lopez relies on authority under 166a(c), however, to challenge a proper decision made under 166a(f). This Court should uphold the trial court's exclusion of the Lopez and Price affidavits.

### 1. **Plaintiff's affidavits** were **conclusory and self-serving.**

Rule 166a(f) requires that "supporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence, ..." TEX. R. CIV. P., Rule 166a(f); *see also Vice v. Kasprzak*, 318 S.W.3d 1 (Tex.App.—Houston[1st Dist.] 2009, pet. denied). Affidavits containing conclusory statements and self-serving statements are not competent summary judgment evidence. *See Kasprzak*, 318 S.W.3d at 11 n. 5 (stating "…conclusory and self-serving affidavits submitted as summary judgment evidence by either the movant or the non-movant are not counted as summary judgment evidence.").

In the case at bar, the Buchholzes specifically objected to the affidavits of Juan Lopez and Scott Preiss as being "[c]onclusory, self-serving, not readily controvertible, not best evidence, and containing unsubstantiated legal and factual

conclusions." The Buchholzes specifically cited Rule 166a(f) as the basis for the objection.[18]

## 2. Subsections 166a(c) is a different standard.

Separately, Rule 166a(c) requires that affidavits of interested witnesses be uncontroverted, clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX. R. CIV. P., Rule 166a(c). The Buchholzes separately objected on such grounds, demonstrating that the witnesses were interested, unclear, not credible, not direct, and controverted, and arguing that unless the affidavits met the elevated requirements of Rule 166a(c), the affidavits could not support a summary judgment.[19] The argument made by the Buchholzes under 166a(c) is <u>not</u> the same argument made under 166a(f).

## 3. Plaintiff cites to inapposite authority

Lopez's argument on appeal conflates the Buchholzes' objections under subsection (f) and subsection (c) of Rule 166a, as well as the distinct line of cases for each subsection. The Buchholzes do not take issue with the proposition that the affidavits of interested witnesses may be used to raise a fact issue.[20] However, such

---

[18] CR 198, Defendants' Objections and Reply to Plaintiff's [Response to Defendants'] Motion for Summary Judgment, p. 3, paragraph 4.

[19] CR 198, Defendants' Objections and Reply to Plaintiff's [Response to Defendants'] Motion for Summary Judgment, p. 3, paragraph 7.

[20] Appellant's Brief, p. 15-16.

affidavits must still meet the separate requirements of Rule 166a(f) to be admissible in evidence. See *Kasprzak*, 318 S.W.3d at 11, n.5.

Lopez bases his argument that the trial court wrongfully excluded the affidavits on two cases; *De La Morena v. Ignenieria E Maquinaria De Guadalupe, S.A.*, 56 S.W.3d 652 (Tex.App.—Waco 2001, no pet.) and *Fieldtech Avionics & Instruments, Inc. v. ComponentControl.com, Inc.*, 262 S.W.3d 813 (Tex.App.—Fort Worth 2008, no pet.). These cases are primarily concerned with the application of Rule 166a(c), not 166a(f); they address circumstances in which uncontroverted affidavit testimony of an interested witness can support summary judgment. Subsection (f), though discussed, is not the basis for the holdings in either case. *De La Morena* in particular recognizes that the two subsections of the Rule are procedurally distinct. *See De La Morena*, 56 S.W.3d at 658. Lopez further ignores that proper objections under Rule 166a(c) related to unclear, controverted and other deficient issue were raised, further defeating their cited cases.

Lopez's argument ignores 166a(f) entirely. Even an uncontroverted interested statement it is not admissible as summary judgment evidence if it is conclusory and self-serving. *See* TEX. R. CIV. P. 166a(f); *Kasprzak*, 318 S.W.3d at 11, n.5. Lopez

**13**

does not address Buchholzes objections to the affidavitsor the trial court's holding related to the self-serving and conclusory nature of the affidavits.[21]

C. **The court correctly held that Lopez's statement that Dave Buchholz made a $5,000 out of his personal checking account was not admissible as evidence.**

The court also correctly concluded that two paragraphs in Lopez's affidavit should be excluded under Rule 193.6(a) of the Texas Rules of Civil Procedure. Paragraphs 5 and 6 of the Lopez affidavit stated that Dave Buchholz made a $5,000 payment towards the construction work, and Lopez relied upon that conduct to support his argument for the existence of an oral contract.[22] Paragraph 6 further stated that the payment was made from Dave Buchholz's *personal* bank account.[23] The Buchholzes objected to the statements on the ground that the $5,000 check purportedly used to make that payment had not been produced in response to a request for production, and evidence regarding the payment should have been excluded.[24] The court sustained the objection.

---

[21] Defendant's Objections and Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, pg. 3, stating, "Conclusory and self-serving affidavits submitted as summary judgment evidence by either the movant or non-movant are not competent as summary judgment evidence. Citing TEX. R. CIV. P., Rule 166a(f).

[22] CR 189-190, Exhibit A, Plaintiff's Response to Defendants' Traditional and No-Evidence Motion for Summary Judgment, paragraphs 5 and 6.

[23] CR 190, Exhibit A, paragraph 6.

[24] CR 198, Defendants' Objections and Reply to Plaintiff's [Response to Defendants'] Motion for Summary Judgment, p. 3, paragraphs 2 and3 3.

Rule 193.6 provides that a party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not disclosed. TEX. R. CIV. P., Rule 193.6(a). Lopez did not timely produce, in response to a timely request for production, the check reflecting the $5,000 payment.

On appeal, Lopez attempts to avoid the Rule's sanction by arguing that he was not seeking to introduce evidence of the check itself, but merely evidence that a payment had been made. He argues further that the Buchholzes were not prejudiced by any delay in producing the check, as the fact of the payment having been made was already reflected in separate, admissible documents, and, therefore, the check, even if not timely disclosed, created no surprise or ambush. This argument appears to be fashioned to get around Rule 193.6 and has nothing to do with the issue at hand, namely, that Lopez seeks to use undisclosed evidence to support the proposition that he was in privity with the Buchholzes.

Lopez's argument effectively circumvents the policy behind Rule 193.6. The argument is flawed because the amount of the check and the fact a payment had been made is unimportant to the Buchholzes complaint. Because Lopez did not produce the check in response to a document production request, he cannot now introduce evidence of the source of the payment from a collateral source – his own testimony – to get around Rule 193.6.

### D. Specific objections to Lopez's affidavit.

#### 1. Specific statements in the affidavit are conclusory.

Contrary to Lopez's argument, the challenged statements in Lopez's affidavit are conclusory. The statements challenged by objection were:

> Paragraph 4, "The work for which J.L. Construction seeks payment was performed in a good and workmanlike manner at the direct request of Dave Buchholz."

> Paragraph 5, "Dave H. Buchholz approved the work and paid only a partial payment of $5,000.00 leaving a balance due of $27,584.80.

> Paragraph 7, "The work was performed in accordance with the instruction given by Dave H. Buchholz to me on behalf of J. L. Construction Co."

> Paragraph 8, "The prices charged were the reasonable and necessary value of the work performed."

A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Kasprzak*, 318 S.W.3d at 11 n. 5.[25] Stated differently, a conclusory statement is one "expressing a factual inference without stating the underlying facts on which the inference is based." *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n. 32 (Tex. 2008)(citing Black's Law Dictionary 308 (8th Ed. 2004)). A witness's affidavit is conclusory if it fails to explain the basis of the witness' statements and link his conclusions to the facts.

---

[25] Self-serving statements are likewise not admissible evidence. A self-serving statement is one made to serve one's own purpose. BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY, 2d Ed. A self-serving statement has no evidentiary value, and serves no useful purpose other than furthering or reinforcing a party's position.

**16**

*Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999). An affidavit is conclusory if it states "a conclusion without any explanation" or asks the factfinder to "take [Plaintiff's] word for it." BLACK'S LAW DICTIONARY 308 (9th Ed. 2009).

In paragraph 4 of his affidavit, Lopez avers that he seeks payment for work performed in a good and workmanlike manner at the direct request of Dave Buchholz. However, he does not provide the court with any facts against which to gauge that statement. He fails to explain the basis of his statement and link his statement to the facts. What was the character of the work? What right did Dave Buchholz have to direct the work? How did he request the work? What work did he request? When did he request it?

Lopez's reliance on *Behr Southerland Construction, Inc. v. H.W. Wahlers, Inc.*, No. 04-00-0069-CV, 2001 WL 729292, at *2 (Tex.App.—San Antonio June 29, 2001) is misplaced. *Behr Southland Construction* is a default judgment case, which has a different standard of proof than a motion for summary judgment. In order to set aside a default judgment, a defendant must allege facts that in law would be a defense to the cause of action asserted by the plaintiff, and must support the facts with affidavits or other proof. *Id*. (citing *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)). The defendant in that case alleged that the plaintiff "did not complete the contract in a timely fashion, nor in a good and workmanlike manner." Those are

facts that, if proven by competent evidence, would constitute a defense at law to the plaintiff's breach of contract claim.

However, those allegations don't *prove* the contract was not completed in a timely fashion, or that the work was done in a good and workmanlike manner. Nor do they raise a fact issue. To raise a fact issue for summary judgment purposes, the evidence, and hence the statements, must be admissible in evidence, and therefore must tend to prove or disprove a fact at issue in the case. *See* TEX. R. CIV. P., Rule 166a(f). Thus, the type of proof required to set aside a default judgment is very different from the type of proof needed to raise a fact issue to avoid summary judgment.

In paragraph 5 Lopez states that Dave Buchholz "approved the work" with no facts to support the assertion. Likewise in paragraph 7 he states that the "work was performed in accordance with the instruction given by Dave H. Buchholz …" and in paragraph 8, he makes a blanket statement that the prices charged were the reasonable and necessary value of the worked performed. Lopez does not provide the court with information to help determine the underlying facts in the case.

Here again Lopez's reliance on a case, *Johnston v. Kruse*, 261 S.W.3d 895, 902 (Tex.App.—Dallas 2008, no pet.), is misplaced. *Johnston* was a case discussing whether lay testimony can establish the reasonable value of services. In the affidavit at issue in that case, the affiant stated that he "put in 10 to 15 hours per week during

2003 and 8 to 10 hours per week for the first quarter of 2004" and "at a rate of $ 50/hr, which is a reasonable pay rate for my work, the value of my time spent working from Kruse Holdings, L.P. is between $30,800 and $45,000." *Id*. at 901. The affiant also stated that "Mr. Kruse knew that I was working for Kruse Holdings, L.P. and consented to my work on its behalf. He never told me to stop efforts to raise money, meet with bankers or CPAs. He knew that I was looking to the Defendants for payment of my services. I was never paid anything in return for my services." *Id*.

Unlike the affiant in the *Johnston* case, Lopez did not provide the trial court with any information against which to measure the value his services. He simply states he did work at Dave Buchholz's instruction, and that the reasonable and necessary value of the work was $27,585.80. Furthermore, what information he does provide, namely the invoices, is inaccurate. Invoice number 209227 shows items charged in the amounts of $622 and $1,656, yet those items purportedly "total" out to $11,388. That represents a discrepancy of $9,110, for which Lopez provides no explanation, and calls into question the accuracy and verity of the amount claimed as damages.

Lopez argues instead that based upon his personal knowledge, he testified that the work for which he sought payment from the Buchholzes was performed at the direct request of Dave Buchholz, in accordance with the instructions given by Dave Buchholz, and approved by Dave Buchholz, and that these statements were neither

conclusions nor subjective opinions. He analogizes his statements to those of a contractor in *Triland Paving Investment Group v. Tiseo Paving Co.*, 748 S.W.2d 282, 284 (Tex.App.—Dallas 1988, no writ). In that case however, the affiant, Glenn Midkiff, provided details, stating that Triland had <u>entered into a contract</u> with Tiseo, further stating that the work had been completed, that $297,711.60 became due but was unpaid, and that Tiseo sent a demand notice and Triland refused to make payment. *Id*.

The most significant difference between the Midkiff affidavit and the one in this case is that Midkiff stated there was a contract between Tiseo and Triland. Lopez never states there is a contract or agreement, oral or written, between him and the Buchholzes. Additionally, in the *Triland* case, a copy of the written contract was part of the summary judgment evidence. The only written contract before the trial court in this case was the one between the Buchholzes and the general contractor, Scott Preiss.

Finally, Lopez argues that all of the statements in his affidavit could have been readily controverted, but that the Buchholzes chose not to. That is incorrect. Lopez's affidavit is controverted – by the documentary evidence submitted by the Buchholzes, and by Dave Buchholz's affidavit, wherein Buchholz states, "Defendants deny the account on which Plaintiff files suit because the Plaintiff was a subcontractor for Scott Preiss Construction, and his alleged contract, oral or

otherwise, was with Scott Preiss Construction." Buchholz also stated that "The alleged work was done during the construction of a home for Defendants. The General Contractor for the construction, Scott Preiss Construction, executed a Contractor's Lien Waiver Affidavit in which he averred that he had paid or caused to be paid all bills, charges, invoices or other amounts due and payable to others for labor, services, and/or materials for the construction, which indicates Plaintiff was paid."[26]

In a nutshell, Lopez's affidavit does not state he had an oral agreement with the Buchholzes, yet he wants the court to infer the possibility of the existence of an oral contract from statements made in his affidavit. However, those statements are conclusory and self-serving because the affidavit is devoid of the simple statement that Lopez and the Buchholzes had an agreement for Lopez to do the work, or any facts about the work.

### E. Specific Objections to the Preiss Affidavit.

#### 1. Specific statements in the affidavit are self-serving and conclusory

Contrary to Lopez's argument, the challenged statements in Preiss' affidavit are conclusory and self-serving. The statements challenged by objection were:

---

[26]     CR 160-161, Exhibit H to Defendants' Motion for Summary Judgment.

Paragraph 4: "The written agreement I had with Dave H. Buchholz and Mary A. Buchholz did not include the installation of a new driveway, sidewalk and flagstone."

Paragraph 5: "The installation of a new driveway, sidewalk and flagstone at the Buchholzes residence was extra work performed by Juan O. Lopez (the "Extra Work")."

Paragraph 6: "The Extra Work performed by Juan O. Lopez was not performed subject to the written agreement between me and the Buchholzes."

Paragraph 7: "The Extra Work performed by Juan O. Lopez was not performed under any agreement between me and Juan O. Lopez."

Paragraph 8: "I had no involvement in directing or agreeing to pay for the Extra Work performed by Juan O. Lopez."

Paragraph 9: "The Buchholzes directed Juan O. Lopez to perform the Extra Work."

Each of the paragraphs contained self-serving statements. Self-serving statements are not competent summary judgment evidence. *Kasprzak*, 318 S.W.3d at 11 n. 5. Each paragraph also contained factual and legal conclusions. Affidavits that contain conclusory statements are likewise not competent summary judgment evidence. *Id*. Statements that (1) his contract with the Buchholzes did not include construction of a driveway, sidewalk, and flagstone, (2) construction of those things was extra work performed by Lopez, and that said extra work was for the Buchholzes, (3) said extra work was not part of the written contract between him (Preiss) and the Buchholzes, and (4) the extra work was not part of a contract between him and Lopez, are all self-serving statements designed to direct liability

22

away from him and onto the Buchholzes. That he had no involvement in directing or agreeing to pay for the extra work, and that the Buchholzes directed the extra work, are likewise self-serving statements designed to support the effort to redirect liability.

The written contract provided for the construction of a "residential structure," e.g. a home. Homes include driveways and sidewalks. That a subcontractor constructed those things as part of the written contract is self-evident. That Lopez was that subcontractor is equally self-evident, and admitted by him. Lopez says he was not paid. Thus, that Scott Preiss did not pay him is also self-evident. Scott Preiss' statements are therefore nothing more than a thinly veiled attempt to redirect liability away from him. The statements are self-serving and not competent summary judgment evidence.

The statements are all also bare-bones factual and legal conclusions. For example, Scott Preiss' statements that construction of the driveway, sidewalk, and flagstone, were not included in the written contract between him and the Buchholzes, provides no factual basis. Preiss does not describe the contract between him and the Buchholzes, or explain why the driveway, sidewalk, and flagstone were not included. Nor does he explain how he has personal knowledge that Lopez performed the work at the direction of the Buchholzes.

Finally, the statement in paragraph 9, that the Buchholzes directed Lopez to perform the extra work is either conclusory or hearsay for which no exception applies. If Preiss heard that the Buchholzes directed the work, he does not explain how or where he heard it, or if told to him, who told him. Lopez contends such a statement would be admissible as a hearsay exception under TEX. R. EVID., Rule 801(e)(2)(A) as a statement of a party. But how is the trial court supposed to know whether the statement was made by the Buchholzes? There is a big difference in saying "I over-heard Dave Buccholz agree with Lopez to construct the driveway," and saying instead "Lopez told me that Buchholz told him to construct the driveway." The first two may fall within the exception provided by 801(e)(2)(A); the latter certainly does not.

Furthermore, the fact that Preiss had personal knowledge of the work covered by the agreement, or had personal knowledge of the slab, framing, stone, and stucco work that he hired and paid Lopez to perform on the Buchholzes' home, does not cure the fact the statements are nonetheless self-serving in this context. Nor do they provide the basic underlying facts to support his conclusion that the installation of the driveway, sidewalk, and flagstone were not included in the written agreement with the Buchholzes, or any agreement he had with Lopez. The Buchholzes' suit against Preiss stating he is responsible controverts the statement and requires sufficient underlying facts to support his self-serving and conclusory statement.

Because the statements in paragraphs 4 through 9 were self-serving and conclusory, they were not proper summary judgment evidence. The trial court properly sustained the Buchholzes objections to the affidavits.

## SECOND ISSUE (RESTATED)

**THE TRIAL COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON LOPEZ'S SUIT ON BREACH OF CONTRACT, SWORN ACCOUNT, QUANTUM MERUIT, AND CONSTITUTIONAL LIEN CLAIMS.**

### A. Standard of Review

### 1. *De Novo* Review; No-Evidence Motion Must Be Considered First.

This Honorable Court reviews a trial court's decision to grant a motion for summary judgment *de novo*. *Travelers Ins. Co. v, Joachim*, 315 S.W.3d 860,862 (Tex.2010). Furthermore, when a party moves for summary judgment on both traditional and no-evidence grounds, the court must consider the no-evidence ground first, because if the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, then there is no need to analyze whether the movant satisfied its burden under the traditional motion. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

### 2. No-Evidence MSJ Standard.

"After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). A no-evidence

motion for summary judgment must be specific in challenging the evidentiary support for an element of a claim or defense. TEX. R. CIV. P., Rule 166a(i). The rule does not authorize conclusory motions or general no-evidence challenges to an opponent's case. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *see* TEX. R. CIV. P., Rule 166a(i). A no-evidence motion for summary judgment is properly granted if the non-movant fails to produce more than a scintilla of evidence to raise a genuine issue of material fact as to an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P., Rule 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 599 (Tex. 2004); *Forbes, Inc. v. Granada Biosciences*, 124 S.W.3d 167, 172 (Tex. 2003). The respondent to a no-evidence motion for summary judgment must bring "forth more than a scintilla of probative evidence to raise a genuine issue of material fact."

### 3. **Traditional MSJ Standard.**

To succeed on a traditional motion for summary judgment movant must show that there is no genuine issue of material fact and that he is entitled to summary judgment as a matter of law. TEX. R. CIV. P., Rule 166a(c); *In re Delta Lloyds Ins. Co. of Houston*, 339 S.W.3d 384, 392 n. 7 (Tex. 2008); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S. W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S. W.2d 546, 548 (Tex. 1985). A defendant who conclusively negates at least one element of the plaintiff's cause of action or conclusively

establishes an affirmative defense is entitled to summary judgment. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

### B. Appellant Failed to Meet His Burden of Proof Under Both Standards.

### 1. Breach of Contract

Lopez did not meet his no evidence burden of proof. Lopez presented no evidence that raised a genuine issue of material fact that (1) he had a valid contract with the Buchholzes, (2) he tendered performance under the contract, (3) the Buchholzes breached the contract, and (4) he was damaged by the breach. Lopez presented no evidence that raised a genuine issue of material fact that there was a meeting of the minds, or regarding the terms of performance or acceptance of the terms. Lopez also presented no evidence that raised a genuine issue of material fact on damages because Scott Preiss, the contractor, had executed a Contractor's Lien Waiver Affidavit stating that all amounts due and payable to others for labor, services, and/or materials for the construction were paid.

Furthermore, the Buchholzes summary judgment evidence negated at least one element of Lopez's claim because it disproved the existence of a valid contract between them and Lopez, or that they were responsible for any breach of a contract.

### 2. The affidavit fails to prove the existence of an oral contract.

Juan Lopez's affidavit does not supply a crucial nexus necessary to raise a genuine issue of material fact, namely, that he had an oral <u>agreement</u> with the Buchholzes to build a driveway, sidewalk, and flagstone. The word "agreement'

appears nowhere in the affidavit.[27] Instead, Lopez danced around a direct and simple statement that Dave Buchholz agreed to pay him for specified work, using phrases such as, "the work was performed … at the direct request of Dave Buchholz" or "Dave Buchholz approved the work." His affidavit was carefully crafted to create the <u>illusion</u> of a fact issue where none existed. Because his affidavit does not provide that crucial nexus, it presents no evidence raising a genuine issue of material fact that there was a meeting of the minds between himself and the Buchholzes, and no evidence raising a genuine issue of material fact showing the existence of an oral contract. His affidavit only raises large red flags as to his claim, especially in light of the fact that he admits that to being the subcontractor for Scott Preiss, the general contractor, except when money was not paid.

3. **The affidavits fail to prove up the terms of the purported oral contract, acceptance of those terms, tender of performance, breach, or damages.**

Lopez states he performed work at the direct request of Dave Buchholz, in accordance with Dave Buchholz's instruction, and which was approved by Dave Buchholz. However, he never states the terms of the agreement, leaving the court instead to infer those terms from the invoices, one of which is undated and both of which do not identify the party to whom the services or materials were sold. Lopez cites *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex.App.—Fort

---

[27] Nor does the word "contract" appear in the affidavit. Why was it so difficult for Lopez to swear to words to the effect of, "Dave Buchholz agreed to pay me for the installation of a driveway, sidewalk, and flagstone?"

Worth 2006, no pet.), for the proposition that an affidavit listing the basic facts to support conclusions concerning the existence of an agreement was sufficient to raise a genuine issue of material fact. A comparison of the affidavit in that case and Lopez's affidavit only strengthens the Buchholzes' argument. For example, the *Residential Dynamics* case affidavit stated:

> In July, 2003, Residential Dynamics, LLC and Defendants discussed marketing various lots located in a larger tract of property owned by Defendants.
>
> Residential Dynamics, LLC and Defendants reached an agreement concerning adding improvements to Lot 27, Lake Country Estates, a/k/a/ 152 Price Circle, Hackberry, Texas 75034.
>
> The agreement provided that Residential Dynamics, LLC would put a manufactured home on the property and would also perform various improvements to the property, including adding a septic system, driveway and other concrete work, and other improvements.

By comparison, the Lopez affidavit provides the Court with only roundabout statements such as "the work for which J. L. Construction seeks payment was performed … at the direct request of Dave H. Buchholz" and "Dave H. Buchholz approved the work …" and "The work was performed in accordance with the instruction given by Dave H. Buchholz." The affidavit doesn't even describe "the work," but rather leaves the Court to infer the nature of "the work" from incomplete and nearly illegible invoices that do not identify the party to whom the services or materials were sold.

Unlike the Lopez affidavit, the affidavit in *Residential Dynamics* stated the parties had reached an agreement. The affidavit also stated that before reaching an agreement, the parties had discussed marketing various lots on property owned by the defendants. But more importantly, the court noted, "the affidavit lists the basic terms of the agreement, states that Appellant performed its obligations, and states the amount of expenses that Appellant incurred in performing, specifying what some of the expenses were." *Id*. at 198. The basic terms of the agreement included putting a manufactured home on the property, installation of a septic system, driveway, and other concrete work. *Id*. Thus, the court held that "[t]he statements provide the basic underlying facts to support the conclusion that an agreement was made." *Id*. at 198.

Whereas the *Residential Construction* case affidavit provided concrete details, background facts against which to measure those details, and stated the parties came to an agreement, the Lopez affidavit provides no statement that the parties had an agreement, oblique statements about Dave Buchholz directing, approving, or instructing work, no description of "the work," and a void of background facts against which to measure even those paltry points.

The Buchholzes cannot stress enough the importance of the fact that Lopez's affidavit does not discuss the terms of any agreement. He instead states that "the work" was performed in accordance with "instructions" given by Dave Buchholz, done in a good and workmanlike manner "at Dave Buchholz's direct request," and

that Dave Buchholz "approved" the work. But what were the terms? What instructions were given? What was "the work"? When were the "directions," "approval" or "work" done? The Lopez affidavit fails to raise more than a scintilla of evidence from which the Court can conclude or infer the terms of an oral contract between Lopez and the Buchholzes. As such, it presents no evidence that raises a genuine issue of material fact regarding those terms.

The Lopez affidavit is equally deficient when it discusses damages. The affidavit in the *Residential Dynamics* case stated:

> Upon completion of the improvements, the property was to be sold, and Defendants were to receive the first $ 35,000 from such sale, said amount to pay Defendants for the cost of the lot.
>
> Upon the sale, any proceeds in excess of $ 35,000, were to be retained by Residential Dynamics, LLC.
>
> Residential Dynamics, LLC incurred expenses in performing under the terms of the agreement. Specifically, Residential Dynamics, LLC has incurred damages in the amount of $ 75,532.53. This includes the cost for the manufactured home as well as the cost for the other materials and labor in developing the lot.

*Id*.

The Lopez affidavit, in comparison, states only that the work was done in a good and workmanlike manner, Buchholz made only a partial payment of $5,000 leaving a balance of $27,548.80, and the prices charged were the reasonable and

necessary value of the work performed. Here again, the statements provide no background information against which to measure these 'facts.'

Worse, Lopez's other exhibits refute Lopez's statement that the prices were reasonable and necessary. Invoice number 209227 shows items charged in the amounts of $622 and $1,656, yet those items purportedly "total" out to $11,388. That represents a discrepancy of $9,110 and as stated previously calls into question the accuracy and verity of the amount claimed as damages.

The Lopez affidavit fails to raise more than a scintilla of evidence from which the Court can conclude or infer that the prices charged were reasonable and necessary. Furthermore, the $9,110 discrepancy in invoice number 209227 refutes any inference the prices charges were reasonable and necessary because the discrepancy shows the invoice is inaccurate.

As such, the affidavits and invoices presented no evidence that raised a genuine issue of material fact regarding the reasonableness and necessity of the amounts charged.

### 4. **The documentary evidence conclusively negates at least one element of Lopez's claim for breach of contract.**

The summary judgment evidence conclusively shows that the only contract was between the Buchholzes and Scott Preiss. Lopez admits he has no separate, written contract with the Buchholzes. Lopez attempts to get around that fact by

alleging the existence of an oral contract, but other than his and Preiss' self-serving and conclusory statements, <u>all</u> the evidence is to the contrary.

Mutual assent, concerning material, essential terms, is a prerequisite to formation of a binding, enforceable contract. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "Meeting of the minds" describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract. *Weynard v. Weynard*, 990 S.W.2d 843, 846 (Tex.App.—Dallas 1999, pet. denied).

The only evidence of a contract is of one between the Buchholzes and Scott Preiss as the general contractor. Pursuant to that contract, the Buchholzes agreed that Preiss would maintain control of the structures and premises of the construction until full and final payment. The Buchholzes retained no rights to possession of the property or the ability to direct subcontractors "in any manner."

The contract between Preiss and the Buchholzes also provided that the general contractor was responsible for the hiring, direction, and payment for all work to build the Buchholz's home. Lopez was a subcontractor for Preiss. Any agreement Lopez had to do work on the property was with Preiss. Prior invoices for work done by Lopez were made out to Preiss. Requests for draws from the construction loan to Lopez were signed by Preiss. Payment for work was received on checks from Scott Preiss Homes. No notice prior to the work's completion and invoice date of October

7, 2013, was received by the Buchholzes. The fact Lopez could not name the Buchholzes as "sold to" parties on the invoices shows there was no meeting of the minds.

*All* the documentary evidence shows that Preiss was the contractor, and Lopez a subcontractor. Lopez submitted all his invoices to Preiss, and was paid by Preiss out of the construction loan account.[28] Some of those invoices show Scott Preiss' name, others show no name, in the upper left quadrant of the invoice. All contain the "840 Haven Point" address in the description block, and it was apparently Lopez's practice to place the address in the description line to identify the location where the services were rendered.

The Buchholzes summary judgment evidence conclusively establishes that the only contract was between the Buchholzes and Scott Preiss, the contractor, and conclusively negates at least one element of Lopez's claim, namely, the existence of a contract between himself and the Buchholzes.

## 2. **Sworn Account**

Lopez does not appear to have briefed his sworn account claim on appeal; therefore any complaint in this regard is waived. *See General Servs. Comm'n v. Little-Tex. Insulation Co.*, 39 S.W.3d 591, 598 n. 1 (Tex. 2001)(appellant's failure to brief, or to adequately brief, an issue on appeal waives that issue).

---

[28]     CR 132, 136 Buchholz MSJ, Exhibit B; CR 138, Exhibit C, CR 149-156, Exhibit F.

Even if he did not waive this argument, the Buchholzes summary judgment evidence negated at least one element of Lopez's claim on a sworn account, to wit, that a systematic record of the account has been kept, identifying with reasonable certainty the nature of each item, the date and the charge thereof.

A suit on a sworn account is not an independent cause of action, but a procedural rule for proof of certain types of contractual claims. *See* TEX. R. CIV. P., Rule 195; *Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860 (Tex. 1979). Where a sworn account is properly pled, the failure to file a sworn denial permits the plaintiff to avoid the necessity of proving the correctness of the account. *Hollingsworth v. Nw. Nat'l Ins. Co.*, 522 S.W.2d 242, 245 (Tex.App.—Texarkana 1975, no writ).

Lopez presented no summary judgment evidence that raised a genuine issue of material fact to show a meeting of the minds, or the terms of any oral contract, or that his contract was with anyone other than Scott Preiss, the contractor. The invoices attached to Lopez's complaint fail to provide even *prima facie* evidence that a systematic record has been kept. First, the "sold to" line on both invoices is blank and unfilled. Second, the "ship to" box is filled out, with the name of Lopez. Third, only one of the invoices is dated. Fourth, the undated invoice shows a $9,110 discrepancy. None of the foregoing shows a systematic record of an account; instead, it shows sloppy record keeping.

Further, when the pleadings do not conform to the writing evidencing the account, the document rather than the pleading controls. *Hassler v. Texas Gypsum Co.*, 525 S.W.2d 53, 54 (Tex.Civ.App.--Dallas 1975, no writ)(citing *Starlight Supply Co. v. Feris*, 462 S.W.2d 608, 609 (Tex. Civ. App. -- Austin 1970, no writ) and *Copeland v. Hunt*, 434 S.W.2d 156, 158 (Tex. Civ. App. -- Corpus Christi 1968, writ ref'd n.r.e.)). Because the invoices do not identify the Buchholzes as the persons to whom the services or materials were sold, they are inconsistent with the pleadings. Because the invoices control over the pleading, and do not identify the party to whom the services or materials were sold, they present no evidence raising a genuine issue of material fact.

A sworn account must show with reasonable certainty the nature of each item, the date and the charge thereof. *Williamsburg Nursing Home, Inc. v. Paramedics, Inc.*, 460 S.W.2d 168, 169 (Tex. Civ. App. -- Houston (1st Dist.) 1970, no writ); *Bookstall, Inc. v. John Roberts, Inc.*, 517 S.W.2d 451, 452 (Tex. Civ. App. -- Austin 1974, no writ); *Texas Man's Shop, Inc. v. Nunn-Bush Shoe Co.*, 401 S.W.2d [4] 716, 718 (Tex. Civ. App. -- Corpus Christi 1966, no writ); *Becker, Smith & Page, Inc. v. Wm. Cameron & Co.*, 22 S.W.2d 951, 952 (Tex. Civ. App. -- Waco 1929, writ dism'd). Plaintiff pleads that the work was performed in the months of September and October 2013, but as stated above, the documents control. Invoice no. 209227 has no date, and totals $11,388 with a failure to show how or why such amounts are

charged. It also shows a $9,110 discrepancy. Invoice 209229 is also illegible and fails to show with reasonable clarity the type of goods sold or services rendered. *Hassler*, 525 S.W.2d at 54.

Because the Buchholzes were strangers to and not parties to the contract for sale of Lopez's services, the claim cannot be upheld against them. *Gibson v. Bostick Roofing & Sheet Metal Co.*, 148 S.W.3d 482, 490 (Tex. App.—El Paso 2004, no pet.)(rule does not apply to transactions between third parties or parties who were strangers to the transaction); *see also McCamant v. Batsell*, 59 Tex. 363 (1883); *Hassler*, 525 S.W.2d at 54. This exception has been applied where the plaintiff's own pleadings—or the invoices or other evidence exhibited as the basis of the obligation—reflect that the defendant was not a party to the original transaction. *See id*. Because the evidence conclusively establishes that Lopez's contract, if any, was with Scott Preiss, the evidence also conclusively establishes that the Buchholzes were strangers to the contract; therefore, they cannot be held liable on a sworn account theory.

Lopez presented no summary judgment evidence sufficient to raise a genuine issue of material fact. Furthermore, Lopez's own evidence conclusively negates at least one element of a claim for sworn account, namely, that a systematic record of the account was kept, identifying with reasonable certainty the nature of each item,

the date and the charge thereof, and that the Buchholzes were strangers to any alleged contract.

### 3. **Quantum Meruit**

The elements of a cause of action for quantum meruit are: (1) valuable services or materials were furnished; (2) for the person sought to be charged; (3) these services and materials were accepted, used and enjoyed by the person sought to be charged; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by the person sought to be charged. *City of Ingleside v. Steward*, 554 S.W.2d 939, 943 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Crockett v. Brady*, 455 S.W.2d 807, 808 (Tex.Civ.App.—Austin 1970, no writ); *Crocket v. Sampson*, 439 S.W.2d 355, 358 (Tex.Civ.App.—Austin 1969, no writ). Lopez presented no evidence raising a genuine issue of material fact showing that valuable services or materials were furnished for the Buchholzes, who are the persons sought to be charged, those services and materials were accepted, used and enjoyed by the Buchholzes, and those services or materials were provided under such circumstances as reasonably notified the Buchholzes that Lopez expected them to pay him.

To sustain a quantum meruit claim, the evidence must show that the efforts were undertaken for the person to be charged and not just that the efforts benefitted that person. *McFarland v. Sanders*, 932 S.W.2d 640, 643 (Tex. App.—Tyler 1996,

no pet.). When a sub-contractor contracts with a contractor for work, an implied contract, or claim for quantum meruit, with the owner is not created simply because the owner is receiving a benefit and the proper responsible party is the contractor. *See id*. The party seeking to recover in quantum meruit must establish that the work done was accepted by the party to be charged "under such circumstances as reasonably notified the recipient that the plaintiff, in performing expected to be paid by the recipient." *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 917 (Tex. App.—Dallas 2008, no pet.); *see Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The evidence must also show that this <u>reasonable notification occurred at the time the services were accepted</u>. *Heldenfels Bros.*, 832 S.W.2d at 41; *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 551 (Tex. App.— Houston [14th Dist.] 2003, pet. denied).

All the evidence in this case shows that Lopez was a subcontractor working for Scott Preiss. There was a contract signed naming Scott Preiss as Contractor.[29] The invoices for the work for which Lopez seeks payment are identical to invoices submitted to Scott Preiss for other construction work on the home construction project. Some of the invoices for prior work by Plaintiff Lopez were made out to Scott Preiss, others were left blank.[30] Some of the prior invoices to Scott Preiss were

---

[29] CR 127-131, Buchholz MSJ, Exhibit A.
[30] CR 132, 136; Buchholz MSJ, Exhibit B.

dated, others were not.[31] Requests for draws from a construction loan to Lopez for prior work were signed by Scott Preiss.[32] Payment for prior work was received on checks from Scott Preiss Homes.[33] The claimed work was memorialized in an undated invoice and an invoice dated October 7, 2013, after work had been completed.[34] The first date the Buchholzes were given any notice that Lopez sought payment from them personally was January 30, 2014.[35]

Even including their conclusory and self-serving statements, the affidavits and invoices present no evidence raising a genuine issue of material fact showing that valuable services or materials were furnished for the Buchholzes, and did not merely benefit the Buchholzes. Nor do they present evidence raising a genuine issue of material fact those services or materials were provided under such circumstances as reasonably notified the Buchholzes that Lopez expected them to pay him.

Finally, the affidavits and invoices present no evidence raising a genuine issue of material fact that reasonable notification occurred at the time the services were accepted. At most, they show the Buchholzes received notice *after* the driveway, sidewalk, and flagstone had been constructed. Thus, the Buchholzes could not have

---

[31]   *Id.*
[32]   CR 137-140; Buchholz MSJ, Exhibit C.
[33]   CR 149-156; Buchholz MSJ, Exhibit F.
[34]   CR 157-159, 162; Buchholz MSJ, Exhibit G and Exhibit I.
[35]   CR 163, Buchholz MSJ, Exhibit J.

been on notice Lopez expected to be paid for the services or materials until after those materials or services were provided.

The affidavits and invoices notwithstanding, the summary judgment evidence conclusively negates at least one element of Lopez's claims for quantum meruit. A "party generally cannot recover under *quantum meruit* where there is a valid contract covering the services or materials furnished." *Houston Med. Testing Services, Inc. v. Mintzer*, 417 S.W.3d 691, 695 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Truly v. Austin,* 744 S.W.2d 934, 936 (Tex.1988); *Gen. Homes, Inc. v. Denison,* 625 S.W.2d 794, 796 (Tex. App.—Houston [14th Dist.] 1981, no writ) (describing the rule as "well settled law"). The only evidence of a contract before this court is the written contract between the Buchholzes and Scott Priess, the contractor. As stated previously, <u>all</u> the evidence shows that Lopez was a subcontractor for Preiss, and the invoices which he purports reflect work done for the Buchholzes at Dave Buchholz's request are identical to the invoices submitted to Preiss. Lopez's affidavits and invoices are insufficient to raise a genuine issue of material fact as to the existence of a contract separate and apart from the contract for the construction of the home.

### 4. **Constitutional Lien**

Because Plaintiff Lopez failed to meet the statutory requirements for perfecting a statutory lien, he has rebranded his claim as a constitutional lien. A

constitutional lien is only available to those who contract directly with the property owner. *Da-Col Paint Mfg. Co. v. American Indem. Co.*, 517 S.W. 2d 270, 273 (Tex. 1974); *Gibson*, 148 S.W.3d at 493. Because a constitutional lien requires a person to be in privity of contract with the property owner, the lien does not apply to derivative claimants such as subcontractors. *See Gibson*, 148 S.W.3d at 493. Thus, "[w]hether one is considered an original contractor or a subcontractor is of fundamental importance. A subcontractor does not have a constitutional lien, and faces a more onerous burden in perfecting a statutory lien." *Da-Col Paint Mfg. Co.*, 517 S.W.2d at 273 (citations omitted). A "subcontractor" is a person who has furnished labor or materials to fulfill an obligation to an original contractor or to a subcontractor to perform all or part of the work required by an original contract. TEX. PROP. CODE ANN. § 53.001(7). "Original contract" means an agreement to which an owner is a party either directly or by implication of law. *Id*.

Because a valid constitutional lien requires the existence of a valid contract between the property owner and Lopez, the Buchholzes re-allege and incorporate by reference their arguments set forth above that there was no contract between them and Lopez, and that Lopez presented no evidence raising a genuine issue of material fact as to the existence of a contract.

Alternatively, the Buchholzes' summary judgment evidence conclusively negated at least one element of Lopez's claim he had a constitutional lien. In this

case the original contract is the agreement signed between the Buchholzes and Scott Preiss.[36] Plaintiff performed work and submitted invoices to Scott Preiss for the construction of the home.[37] Scott Preiss signed draw requests and checks from Scott Preiss were issued to Plaintiff Lopez.[38] The last dated invoice, submitted after all work was completed, was submitted on the same day that the Buchholzes and Scott Preiss signed affidavits stating that the construction was complete and all claims to that date had been paid.[39]

Because the work completed by Lopez was for the work contracted for between the Buchholzes and Scott Preiss, and because there was no privity of contract between the Buchholzes and Lopez, the affidavits and invoices present no evidence raising a genuine issue of material fact that a contract existed between him and the Buchholzes.

### THIRD ISSUE (RESTATED)

**NOTWITHSTANDING THE FACT THE TRIAL COURT SUSTAINED BUCHHOLZES' OBJECTIONS TO THE AFFIDAVITS OF LOPEZ AND PREISS, LOPEZ DID NOT PRESENT SUFFICIENT EVIDENCE IN SUPPORT OF HIS CLAIMS.**

The Buchholzes first objected to the admissibility of the affidavits in their entirety, and then to specific paragraphs in each affidavit. The Court in the Order

---

[36]  CR 127-131, Buchholz MSJ, Exhibit A.
[37]  CR  132, 136; Buchholz MSJ, Exhibit B.
[38]  CR 137-140, 149-156; Buchholz MSJ, Exhibit C and Exhibit F.
[39]  CR 147, 157-159; Buchholz MSJ, Exhibit E and Exhibit G.

granting the summary judgment, "sustain[ed] Defendant's objections to Plaintiff's summary judgment evidence." Therefore, the Court sustained the entirety of the Buchholzes objection to both affidavits.

Even if Lopez is correct, and the Buchholzes did not object to paragraph 9 of his affidavit, the paragraph and invoices are nonetheless insufficient to raise a genuine issue of material fact. Paragraph 9 states that the "undated invoice and the invoice dated October 7, 2013 ... were submitted to Dave H. Buchholz for payment on or about October 7, 2013."[40] Lopez contends that the invoices reference the Buchholz's home (840 Haven Point Loop), identify the work performed, that the work so identified was "flagstone porch and steps," "cover with flagstone bench," "driveway," and "seventeen steps," and that the October 7, 2013 invoice references the $5,000 credit, and that said evidence, standing on its own, presents more than a scintilla of evidence on Lopez's quantum meruit claim.[41] He further argues that the draw requests, invoices, and checks from Preiss to Lopez, attached to the Buchholz's motion for summary judgment, demonstrate that the driveway, sidewalk, and flagstone work were outside the scope of work originally performed by Lopez for Preiss as a subcontractor.

---

[40]     CR 190.
[41]     CR 191.

The invoices show only that work was purportedly performed at 840 Haven Point Loop, the purported nature of the work, and the purported charges. They do not show that those services were performed separate and apart from the written contract between the Buchholzes and Scott Preiss. When compared to the other invoices, which Lopez admits were for work he did as a subcontractor for Preiss, the invoices are indistinguishable. Like some of the invoices presented to Preiss by Lopez, the two invoices identify no one in the "sold to" section. Like all of the invoices submitted to Scott Preiss, they identify work done at 840 Haven Point Loop. And like some of the invoices submitted to Scott Preiss, one is dated, and one is not. So how are they distinguishable? They are not.

The fact that Lopez says he submitted the invoices to Dave Buchholz for payment on or about October 7, 2013, is not enough to remove them from the ambit of the Buchholz's written contract with Scott Preiss, or whatever agreement Lopez had with Preiss. What would set the invoices apart is a statement by Lopez that he had an agreement with Dave or Mary Buchholz to do the work. That statement does not exist. What does exist are conclusory and self-serving statements that dance around that key point, but never state it. If the conclusory and self-serving statements are inadmissible, paragraph 9 and the two invoices are not enough to save Lopez's quantum meruit claim.

**THE TRIAL COURT PROPERLY AWARDED THE BUCHHOLZES ATTORNEYS' FEES FOR THEIR DECLARATORY JUDGMENT COUNTERCLAIM BECAUSE THE DECLARATORY JUDGMENT COUNTERCLAIM SOUGHT AFFIRMATIVE RELIEF DIFFERENT THAN THE RELIEF REQUESTED BY LOPEZ.**

Lopez raises this argument for the first time on appeal. As a prerequisite to presenting a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion . . . with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P., Rule 33.1(a). This is true of an alleged trial error regarding an attorney's fees award because such error is not fundamental. *Jimoh v. Nwogo*, 2014 Tex. App. LEXIS 13797, 2014 WL 7335158 (Tex. App. Houston 1st Dist. Dec. 23, 2014) (citing *Kelly v. Brenham Floral Co.*, No. 01-12-01000-CV, 2014 Tex. App. LEXIS 9464, 2014 WL 4219448, at *4 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no pet.) (mem. op.); *Tex. Dep't of Pub. Safety v. Burrows*, 976 S.W.2d 304, 307 (Tex. App.—Corpus Christi 1998, no pet.)).

Lopez never raised this argument to the trial court, either in his response to Defendants' motion for Summary Judgment, or in his motion for rehearing. The only argument provided by Lopez in his response was that the Buchholzes had requested attorney's fees under Chapter 38 of the Texas Civil Practices & Remedies Code, but had presented no evidence of their entitlement to fees under that Chapter. *See* TEX. CIV. PRAC. & REM. CODE § 38.001. However, the Buchholzes never requested

attorney's fees under Chapter 38. Instead, they requested attorney's fees under the Texas Declaratory Judgments Act. TEX. CIV. PRAC. & REM. CODE § 37.009. Furthermore, the Buchholzes presented evidence of attorney's fees in the form of the affidavit of Joseph L. Lanza, attached as Exhibit K to the Motion for Summary Judgment.

Lopez also never raised an argument that the Buchholzes declaratory judgment counterclaim "mirrored" his claim for foreclosure, or that a declaratory judgment was not available to settle disputes already pending before the trial court, and he never briefed that issue. Lopez only argued against granting summary judgment in favor of the Buchholzes on his cause of action for foreclosure. Therefore, his argument on appeal is waived because he did not first present it to the trial court.

Alternatively, if the Court concludes Lopez raised and briefed this issue at the trial level, or that the issue may be presented for the first time on appeal, the Buchholzes contend that their claim for declaratory relief does not mirror Lopez's claim for foreclosure of his constitutional lien; therefore they are entitled to declaratory relief, and attorney's fees.

Lopez sought to foreclose on his constitutional lien. There are two sources of protection for mechanics and materialmen in Texas: (1) article XVI, section 37, of the constitution; and (2) chapter 53 of the Property Code. TEX. CONST. art. XVI, §

37; TEX. PROP. CODE §§ 53.001-.260; *see Hayek v. Western Steel Co.*, 478 S.W.2d 786, 790-91 (Tex. 1972). The constitution grants to each contractor who enters into a direct contractual relationship with the real property owner a lien upon the property for materials and labor provided in improving it. TEX. CONST. art. XVI, § 37; *Hayek*, 478 S.W.2d at 790. The constitutional lien is self-executing, meaning that no notice or filing requirements must be met for the lien to attach. The lien exists independently and apart from any legislative act. *See Strang v. Pray*, 89 Tex. 525, 35 S.W. 1054, 1056 (1856). Thus, the lien exists, whether or not suit is filed, and so long as the lien exists, it is a cloud on the title of the property.

When a declaratory judgment counterclaim has greater ramifications than the original suit, the trial court may allow the counterclaim. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 842 (Tex. 1990). "A party bringing a counterclaim may recover attorney's fees under the Uniform Declaratory Judgment Act if its counterclaim is more than a mere denial of the plaintiff's cause of action." *Industrial Structure & Fabrication v. Arrowhead Indus. Water*, 888 S.W.2d 840, 845, (Tex.App.—Houston 1st Dist. 1994, no pet.)(citing *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 638 (Tex. App.--Austin 1992, writ denied)(citing *BHP Petroleum Co.*, 800 S.W.2d at 841-42)). A counterclaim is more than a mere denial of the plaintiff's cause of action when the counterclaim seeks "some form of

affirmative relief." *Coastal States Crude Gathering Co. v. Natural Gas Odorizing, Inc.*, 899 S.W.2d 289, 291 (Tex.App.—Houston[1st Dist.] 1995, writ denied).

In this regard, *Industrial Structure & Fabrication v. Arrowhead Indus. Water*, 888 S.W.2d 840, 845, (Tex.App.—Houston 1st Dist. 1994, no pet.) is instructive. In that case, plaintiff sued on an M&M lien. The two defendants brought counterclaims in the form of declaratory judgment actions. One defendant, Air Products, sought a declaration to remove the cloud on title that resulted from the filing of an invalid lien. The second defendant, Arrowhead, sought a declaration that the contract between it and the plaintiff was fully performed, that both parties were discharged, and that no other obligation existed. The court of appeals held that the counterclaims for declaratory judgment were more than mere denials of the plaintiff's claim, and the trial court did not abuse its discretion in awarding attorney's fees. *Id*.

## CONCLUSION

In conclusion, for the foregoing reasons, the trial court properly excluded the affidavits of Juan Lopez and Scott Preiss. Regardless of whether such exclusion was proper, in whole or in part, Lopez nonetheless failed to present sufficient summary judgment evidence to raise a genuine issue of material fact on each of the challenged elements in his causes of action or, in the alternative, the Buchholzes negated at least one element of each claim. The Buchholzes were entitled to summary judgment on

all of Lopez's claims. Accordingly, they respectfully request this Honorable Court

to affirm the judgment of the trial court.

Respectfully submitted:

By: /s/ Joseph L. Lanza
     Joseph L. Lanza
     Texas Bar No. 00784447
     J. Seth Grove
     Texas Bar No. 24069833
     The Vethan Law Firm, P.C.
     8700 Corwnhill Blvd., Suite 302
     San Antonio, Texas 72209
     (713) 526-2222 voice
     (713) 526-2230 facsimile
     Attorneys for Appellee
     Antonio Murillo d/b/a
     Tiger Construction

## CERTIFICATE OF COMPLIANCE WITH TRAP 9.4

I hereby certify that the foregoing document complies with the requirements of TEX. R. APP. P., Rule 9.4(e) and (i), in that the typeface is 14 point New Times Roman, with footnotes being in 12 point, and the brief, exclusive of the items excluded under Rule 9.4(i)(1), does not exceed 15,000 words in length.

/s/ <u>Joseph L. Lanza</u>
Joseph L. Lanza

## CERTIFICATE OF SERVICE

I certify that on July 2, 2015, a true and correct copy of the attached was served on all attorneys of record in accordance with the Texas Rules of Appellate Procedure as shown below:

COATS|ROSE                                          *Via Electronic Service*
Richard C. McSwain
Adam J. Richie
Ryan T. Kinder
Jamie Cohen
1020 Northeast Loop 410, Suite 800
San Antonio, Texas 78209
Attorneys for Appellant Juan O. Lopez d/b/a J.J. Construction Co.

/s/ <u>Joseph L. Lanza</u>
Joseph L. Lanza